1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MARVIN ORR,                          No. CIV. S-13-0839 LKK/AC

12            Plaintiff,

13        v.                              **ORDER**

14   COUNTY OF SACRAMENTO;
     Sacramento County Sheriff's
15   Department Sheriff SCOTT
     JONES; Sacramento Main Jail
16   Commander RICHARD PATTISON;
     Sacramento County Sheriff's
17   Department Chief of
     Correctional and Court
18   Services JAMIE LEWIS;
     Sacramento County Chief of
19   Correctional Health Services
     AARON BREWER; and DOES 1
20   through 30, inclusive,

21            Defendants.

22

23   **I.   BACKGROUND**[1]

24        Plaintiff, an inmate at the Sacramento County Main Jail has

25   "a history of serious medical issues," including diabetes, a

26   seizure disorder, arthritis and joint problems, and had undergone

27   _____

28   [1] The background facts are as alleged in the Complaint (ECF No.
     1).

                                    1

1  bilateral hip replacements. Complaint (ECF No. 1) ¶¶ 4, 19. As
2  a consequence, plaintiff alleges that he "is a qualified
3  individual pursuant to the Americans with Disabilities Act who
4  required accommodations." Id. ¶ 19. Plaintiff alleges that he
5  required an accommodation of being housed on a lower tier (and on
6  a lower bunk) at the jail. Id. ¶ 20.

7  Plaintiff was placed in custody at the Sacramento County
8  Main Jail on June 6, 2012, to finish out a misdemeanor term. Id.
9  ¶ 19. The medical staff, recognizing plaintiff's medical needs,
10  generated two "Miscellaneous Medical Needs forms" on June 6 and
11  7, 2012, stating that plaintiff "needed both lower bunk and lower
12  tier housing for the length of his stay." Complaint ¶ 21.

13  Notwithstanding plaintiff's need for accommodation and the
14  medical staff's request that he be accommodated, plaintiff "was
15  housed on 6West on an upper bunk in an upper tier cell."
16  Complaint ¶ 22. On June 14, 2012, plaintiff fell while walking
17  up the stairs to his upper tier cell. Complaint ¶ 23. Plaintiff
18  suffered no broken bones, but he did suffer an unspecified
19  "personal injury," as well as "pain and suffering, emotional
20  distress and mental anguish." Complaint ¶¶ 25 & 35. After the
21  fall, and after plaintiff's attorney intervened, plaintiff was
22  "finally given the medically required housing." Complaint ¶ 24.

23  Plaintiff filed this lawsuit under 42 U.S.C. § 1983,
24  alleging an Eighth Amendment violation for deliberate
25  indifference to his serious medical needs, Title II of the
26  Americans with Disabilities Act, 42 U.S.C. § 12132, for failure
27  to accommodate him, and California state law, for negligence.
28  The suit names the County, the named individual defendants, and

2

unknown "Does," as defendants.  The named individual defendants are Scott Jones, the County Sheriff, Richard Pattison, the County Jail Commander, Jamie Lewis, the Sheriff's Chief of Correctional and Court Services, and Aaron Brewer, the County Chief of Correctional Health Services.  The named individual defendants are each sued in their official and their individual capacities.

Defendants move to dismiss all claims against all defendants, for failure to state a claim.

## II.  DISMISSAL STANDARD

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[2]

"While legal conclusions can provide the framework of a

_____

[2] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

3

complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. <u>Iqbal</u>, 556 U.S. at 679. <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).[3] A complaint may fail to show a right to relief either

---

[3] <u>Twombly</u> imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of <u>Conley</u>, although it did not overrule that case outright. <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not overruling <u>Conley</u> ...," although it was retiring the "no set of facts" language from <u>Conley</u>). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 2101 (2012). <u>Starr</u> compared the Court's application of the "original, more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (<u>per curiam</u>), with the seemingly

by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS**

**A.   Eighth Amendment Claims under 42 U.S.C. § 1983.**

Plaintiff's first four claims are brought pursuant to 42 U.S.C. § 1983.  That statute provides a remedy for plaintiff if his federal constitutional right has been violated by a "person" acting under color of law.  42 U.S.C. § 1983.  The County is a "person" subject to liability under Section 1983.  Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185 (9th Cir. 2002) (regarding county's Section 1983 liability for deliberate indifference to inmate's medical needs), cert. denied, 537 U.S. 1106 (2003) (quoting Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 689 (1978)).[4]

Plaintiff's underlying constitutional claim is that defendants violated his Eighth Amendment right to be free from cruel and unusual punishments, by virtue of their deliberate indifference to his serious medical needs.

To state the underlying constitutional claim, the Complaint must allege first, a "serious medical need," and second, that defendants' response to the need was deliberately indifferent.

---

"higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal.  See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

[4] However, defendants are correct that the County "may not be held liable under a respondeat superior theory."  Gibson, 290 F.3d at 1185.

5

1    Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012) (plaintiff

2    stated a Section 1983 for deliberate indifference stemming from

3    defendants' failure to follow medical directives that plaintiff

4    be placed on a lower bunk).[5]   The second prong, "deliberate

5    indifference" is shown by: (a) defendants' purposeful act or

6    failure to respond to a prisoner's pain or possible medical

7    need;[6] or (b) harm caused by the indifference.   Id.

8        Defendants assert that the claim against the County "solely

9    alleges liability based on individual conduct of ignoring

10   plaintiff's medical needs," and is thus a prohibited respondeat

11   superior claim under Monell.   Motion at 11.   They move to dismiss

12   the named individual defendants on the grounds that no "personal

13   involvement" is alleged.   Motion at 7, 10-12.   Plaintiff opposes

14   the motion.[7]

15              1.    Claim 1:  "Deliberate Indifference."

16       Claims 1 to 4 are Section 1983 claims in which plaintiff

17   alleges that his Eighth Amendment rights were violated.   The

18   claims all arise out of the same basic set of facts.   In Claim 1,

19   the Complaint alleges that employees at the Sacramento County

20   Main Jail assigned plaintiff to housing in the upper tier (and on

21   _____

22   [5] Citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

23   [6] Plaintiff's "allegations of deliberate indifference to his
     medical condition were sufficient to satisfy the pleading
24   requirement."  Akhtar, 698 F.3d at 1214.

25   [7] Defendants assert that "Plaintiff does not oppose Defendants
     Jones, Pattison, Lewis, and Brewer's motion to dismiss the first
26   claim.  Therefore the individual defendants should be dismissed."
     However, plaintiff does oppose dismissal of the First Claim
27   against defendants in their individual capacities, as well as
     their official capacities.
28

an upper bunk), which directly led to his injury when he fell
while climbing the stairs to the upper tier.  Defendants did so,
plaintiff alleges, with deliberate indifference to his serious
medical needs, which necessitated that he be housed on the lower
tier (and on a lower bunk).

Because Claims 2, 3 and 4 allege liability for this same
conduct, but based upon an "Unconstitutional Policy,"
"Unconstitutional Practices/De Facto Policy," and "Supervisory
Liability," the court will construe Claim 1 as alleging direct
liability only against those who actually made the upper tier
assignment and who actually housed plaintiff there.  The specific
defendants who actually engaged in this conduct are alleged to be
Does 1-10, only.  See Complaint ¶ 13.

The Complaint is clear in alleging that the named individual
defendants were responsible for "training and supervision" of the
Doe defendants, but that it was "[t]hose Does" -- not the named
individual defendants -- who "failed to implement the lower tier,
lower bunk housing recommendation or properly classify Orr's cell
and bedding assignment."  Complaint ¶¶ 9, 10, 12, 13.  There is
nothing in the "Factual Allegations" portion of the Complaint
that alleges or implies that the County of Sacramento itself, or
any of the named individual defendants actually assigned or
housed plaintiff on the upper tier.  Thus, the liability of the
County and the named individual defendants are addressed in the
following Claims, which allege liability through policy, custom
and practice, and through supervision of the Does by the named
individual defendants.

Accordingly, the court will construe Claim 1 to assert

7

1    liability only against Does 1-10, but not against the County or

2    the individual named defendants.   To the degree the Complaint

3    alleges a claim against the County or the individual named

4    defendants, those defendants' motion to dismiss Claim 1 will be

5    granted.

6            **2.   Claim 2: "Unconstitutional Policy."**

7        Claim 2 alleges that the unconstitutional conduct alleged in

8    Claim 1 was "the direct and proximate result of policies"

9    promulgated by the County, all the named individual defendants,

10   and Does 16-20.   Does 16-20 are those County employees who were

11   allegedly "responsible for the promulgation of the policies and

12   procedures" under constitutional attack here.   Complaint ¶ 15.

13   Further, the Complaint alleges, those policies "were a direct and

14   proximate cause of plaintiff's injuries."   Id. ¶¶ 44 45.   These

15   allegations properly state a Section 1983 claim against the cited

16   defendants, as discussed below.   Since plaintiff divides up the

17   "policy, practice and custom" claim into one entitled

18   "Unconstitutional Policy" (Claim 2) and one entitled

19   "Unconstitutional Practices/De Facto Policy" (Claim 3), the court

20   will construe Claim 2 as attacking only "official" County policy,

21   and address practice, custom and "de facto" policies in Claim 3.

22   Moreover, the only Does named in Claim 2 are Does 16-20, who

23   "were responsible for the promulgation of the policies and

24   procedure."[8]

25   _____

     [8] They are also alleged to have "permitted the customs/practices
26   pursuant to which the acts alleged herein were committed."
     Complaint ¶ 15.   This latter allegation seems to undo plaintiff's
27   attempt to finely segregate each aspect of the Section 1983
     claim.   To keep things relatively simple, the court will leave
28   these allegations for the claim that addresses customs and

1          **a.   The County.**

2          There are at least "two routes" to County <u>Monell</u> liability

3     under Section 1983: (1) the County itself violated plaintiff's

4     rights, or directed its employees to do so, acting with the

5     required state of mind; or (2) the County is responsible for a

6     constitutional tort committed by its employee.  <u>Gibson</u>, 290 F.3d

7     at 1185 87 (describing "two routes" to municipal liability under

8     Section 1983).[9]

9          Plaintiff's underlying constitutional claim is that

10    defendants violated his Eighth Amendment rights by deliberate

11    indifference to his serious medical needs.  "A public official's

12    'deliberate indifference to a prisoner's serious illness or

13    injury' violates the Eighth Amendment ban against cruel

14    punishment."  <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir.

15    2002), <u>quoting</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976).

16                     **(1)   Route 1.**

17         Under the first route to municipal liability, "a

18    municipality may be liable under § 1983, just as natural persons

19    are, because when Congress enacted § 1983 it 'intend[ed]

20    municipalities and other local government units to be included

21    among those persons to whom § 1983 applies.'"  <u>Id.</u> (<u>quoting</u>

22    <u>Monell</u>, 436 U.S. at 689).  To be liable under this route, the

23    municipality must have "acted with 'the state of mind required to

24    prove the underlying violation,' just as a plaintiff does when he

25    or she alleges that a natural person has violated his federal

26    ―――――――――――――――――――――――――――――――――――――――――――――――

      practices (Claim 3).

27

      [9] <u>Citing</u> <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404, 406-
28    07 (1994) and <u>Canton v. Harris</u>, 489 U.S. 378, 387 (1989)).

                                    9

1   rights.'" Id. (quoting Board of County Comm'rs, 520 U.S. at 405).

2       The municipality can "act" through an official policy-making

3   mechanism, such as a local ordinance.   Monell, 436 U.S. at 690

4   (municipality may be liable under Section 1983 for "action that …

5   implements or executes a policy statement, ordinance, regulation,

6   or decision officially adopted and promulgated by that body's

7   officers").   Alternatively, the County can "act" through the

8   actions of its "authorized decision-maker." Thompson, 885 F.2d

9   at 1443.   Thus:

10          [m]unicipal liability under Monell is established where "the
            appropriate officer or entity promulgates a generally
11          applicable statement of policy and the subsequent act
            complained of is simply an implementation of that policy."
12          Bd. of County Comm'rs v. Brown, 520 U.S. 397, 417 (1997).
            Such a policy may either be "explicitly adopted" or "tacitly
13          authorized."

14  Harper v. City of Los Angeles, 533 F.3d 1010, 1024 (9th Cir.

15  2008) (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th

16  Cir. 1986), cert. denied, 479 U.S. 1054 (1987)).

17      The "underlying violation" here is an Eighth Amendment

18  violation allegedly arising from the County's deliberate

19  indifference to plaintiff's serious medical needs.   To be liable,

20  the County must have: (1) "had a policy that posed a substantial

21  risk of serious harm;" and (2) "known that its policy posed this

22  risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

23  To survive dismissal of a Section 1983 deliberate indifference

24  claim against the County based upon an unconstitutional policy,

25  the Complaint must allege that the County's policy "posed a

26  substantial risk of serious harm" to plaintiff.   See Gibson

27  (county's Section 1983 liability for deliberate indifference to

28
                                    10

inmate's medical needs).

As for the County's "knowledge," it can be liable only if it "'knows of and disregards an excessive risk to inmate health and safety.'" Id. at 1187 (quoting Farmer, 511 U.S. at 841). If the County is actually aware of "a substantial risk of serious harm," it will be "liable for neglecting a prisoner's serious medical needs" on the basis of either its "action" or its "inaction." Id. (citing Farmer, 511 U.S. at 842).

The Complaint sufficiently alleges a County policy that posed a substantial risk of serious harm. It specifically alleges that the Sacramento County Sheriff's Department: (1) has "a custom and practice of ignoring lower tier, lower bunk recommendations" from its own medical staff; and (2) has a de facto policy of "systemic failure to accommodate the serious medical needs of inmates at the Sacramento County Main Jail specifically related to their needs of lower bunk, lower tier housing assignments." Complaint ¶¶ 26 & 34(b). Further, it alleges that the lawsuit was filed to address "the systemic and on-going failure of the Sacramento County Main Jail to properly accommodate the special medical needs of inmates and detainees and particularly as they relate to lower bunk, lower tier recommendations." Complaint ¶ 3.

The Complaint also sufficiently alleges that the County "knew" that its policy posed the risk of substantial harm.[10]

---

[10] The cases acknowledge the difficulty of discerning what a municipality "knows," but it can be determined by reference to the state of mind of its policymakers "who are, of course, natural persons." See Gibson, 290 F.3d at 1189 n.10.

11

1   Specifically, the County knew its policies posed this risk

2   because its own medical staff recommended, upon plaintiff's being

3   taken into custody at the jail, and on two separate occasions,

4   that because of plaintiff's medical condition, he should be

5   housed on the lower tier.  In addition, the Complaint alleges

6   that other disabled inmates have suffered similar injuries at the

7   same jail, arising from "being improperly placed on upper bunks

8   and/or upper tiers in disregard of medical advice and/or obvious

9   medical needs."  Complaint ¶¶ 31 & 32.  It goes on to allege that

10  these prior injuries led to hospitalizations for those inmates

11  and/or prior litigation by them.[11]

12      Finally, the Complaint sufficiently alleges that this County

13  policy is what led, directly and proximately, to plaintiff's

14  injury, since it was its directive to ignore the medical

15  recommendation that led to plaintiff's fall while climbing to the

16  upper tier.

17      In sum, the Complaint sufficiently alleges that the County's

18  employees' failure to assign plaintiff to lower tier housing was

19  the direct result of a County policy to ignore the medical

20  recommendations of its own staff in regard to housing disabled

21  inmates.  The County's deliberate indifference, in addition to

22  being alleged specifically, can be inferred from the policy

23  itself: ignore the medical recommendations of its own medical

24  staff on where to house disabled inmates.

25                      **(2)  Route 2.**

26  _____

    [11] The Complaint also alleges that previously, plaintiff himself
27  was injured as a result of this policy, leading to litigation,
    although that injury is alleged to have resulted from assignment
28  to a higher bunk, rather than housing on the higher tier.

                              12

1  Another route to municipal liability is through the conduct
2  of its employees, even where the County did not commit the
3  violation itself, nor direct its employee to do so.  Under this
4  route, the County can be liable if (1) a County employee violated
5  plaintiff's rights, (2) the County has policies (or "customs,"
6  discussed in Claim 3), that amount to deliberate indifference (as
7  that phrase is defined by Canton), and (3) these policies were
8  the "moving force" behind the employee's violation of plaintiff's
9  constitutional rights, in the sense that the County could have
10  prevented the violation with an appropriate policy.  Gibson, 290
11  F.3d at 1193-94 (citing Amos v. City of Page, 257 F.3d 1086, 1094
12  (9th Cir. 2001)).

**(a)  Allegations that a County employee violated plaintiff's Eighth Amendment rights.**

The Complaint specifically alleges that unknown County employees (Does 1-10), ignored his need to be accommodated with a lower tier housing assignment, and instead placed him on an upper tier.  See Complaint ¶¶ 9-16.  It alleges that these Does did this out of deliberate indifference to his serious medical needs, and ignoring the specific recommendation from jail medical personnel that he be housed on the lower tier.  Id.  The Complaint further alleges that this conduct directly led to plaintiff's injury, in that the failure to house him on the lower tier despite his medical conditions, forced him to climb the stairs to the upper tier, resulting in his fall.  Id. ¶¶ 23, 35 & 38.

////

////

13

1

2                                       **(b)  Allegations  of  County  customs  and policies       amounting       to       deliberate**

3                                       **indifference.**

4

5      The  Complaint  sufficiently  alleges  the  existence  of  an

6 official  County  policy  amounting  to  deliberate  indifference,  as

7 set  forth  above.   The  County's  alleged  policy  of  ignoring  the

8 recommendations  of  its  own  medical  staff  on  how  disabled  inmates

9 should  be  housed,  is  plainly  a  policy  of  deliberate  indifference.

10

11                                       **(c)  Allegations  of  County  policy  as  the moving  force  behind  the  violation.**

12

13      The  Complaint  sufficiently  alleges  that  the  County's  policy

14 was  the  moving  force  behind  the  alleged  constitutional  violation.

15 It  alleges  that  the  policy  was  to  ignore  medical  recommendations

16 that  an  inmate  be  housed  in  a  lower  tier.   It  was  pursuant  to

17 this  policy  that  plaintiff  was  housed  in  the  upper  tier  despite  a

18 medical  recommendation  to  the  contrary.   No  other  motivation  is

19 alleged  or  can  reasonably  be  inferred  from  the  complaint.

20 Further,  the  Complaint  alleges  that  plaintiff's  injury  was  the

21 direct  and  proximate  result  of  this  policy  and  its  implementation

22 by  the  Does.   Further,  it  may  reasonably  be  inferred  from  the

23 Complaint  that  if  the  County  had  a  policy  in  place  to  <u>follow</u>  the

24 medical  recommendations  of  its  medical  staff  (rather  than  ignore

25 them),  plaintiff's  injury  would  not  have  occurred.

26      The  Complaint  sufficiently  alleges  County  liability  under

27 both  routes  set  forth  in  <u>Gibson</u>.   Accordingly,  the  County's

28 motion  to  dismiss  Claim  2  will  be  denied.

1

**b.   Individual named defendants.**

2     The individual named defendants assert that plaintiff fails

3 to allege their personal involvement in plaintiff's

4 constitutional deprivation, as required by <u>Simmons v. Navajo</u>

5 <u>County, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010) ("[e]ach

6 Government official, his or her title notwithstanding, is only

7 liable for his or her own misconduct").   However, the Complaint

8 <u>does</u> allege these defendants' personal involvement, namely, that

9 they "promulgated" the unconstitutional policies that led

10 directly to plaintiff's injury.   Complaint ¶¶ 9-12.

11     Defendants' response to the charge that they promulgated the

12 challenged policies seems to be that only the Sheriff could have

13 promulgated any "official county policy" regarding the jail and

14 the "safekeeping of inmates" there, and that defendants Lewis,

15 Pattison and Brewer should therefore be dismissed from this

16 claim.   Motion at 13-14.   In support, defendants cite Cal. Penal

17 Code § 4000 and Cal. Gov't Code § 26605.   It is correct that

18 "[t]he sheriffs have exclusive responsibility for running the

19 county jails," <u>Streit v. County of Los Angeles</u>, 236 F.3d 552,

20 567 (9th Cir.), <u>cert. denied</u>, 534 U.S. 823 (2001) (citing Cal.

21 Gov't Code § 26605), and that the county jails are "kept" by the

22 County Sheriff.   However, defendant has identified nothing in

23 either statute, or any case, that would counter the common-sense

24 notion that the Sheriff could delegate duties to other senior

25 officials, such as Lewis, Pattison and Brewer.   <u>See, e.g.</u>, <u>Ulrich</u>

26 <u>v. City and County of San Francisco</u>, 308 F.3d 968, 985 (9th Cir.

27 2002) (municipal liability can be based upon the action of a non-

28 final policy-maker if "an official with final policymaking

15

1   authority either delegated that authority to, or ratified the
2   decision of, a subordinate") (emphasis added).[12]

3       Defendants also cite Thompson v. City of Los Angeles, 885
4   F.2d 1439, 1446 (9th Cir. 1989),[13] and other cases for the
5   proposition that defendants other than the Sheriff cannot be held
6   liable for promulgating policies.   However, Thompson was a suit
7   against California and the City and County of Los Angeles.   It
8   did not involve the liability of any individual, and sheds no
9   light on defendants' argument here.[14]   The other cases cited by
10  defendants similarly address whether the municipality may be held
11  liable based upon the decisions or actions of municipal officers,
12  not whether the officers themselves may be held liable.[15]

13  ─────────────
14  [12] Nor have defendants asserted or argued that policymakers
    themselves cannot be held liable for unconstitutional policies
    they promulgate.   See, e.g., Cabrales v. County of Los Angeles,
15  864 F.2d 1454 (9th Cir. 1988) (affirming jury verdict against
    county and its policymaker) (this decision was vacated at 490
16  U.S. 1087 (1989), but reinstated at 886 F.2d 235 (9th Cir. 1989),
17  cert. denied, 494 U.S. 1091 (1990)).

18  [13] Overruled on other grounds by Bull v. City and County of San
    Francisco, 595 F.3d 964 (9th Cir. 2010) (en banc).
19
    [14] Defendants have not argued that the County cannot be liable
20  based upon the purported inability of defendants Lewis, Pattison
    and Brewer – that is, anyone other than the Sheriff – to
21  promulgate an "official" policy."   In any event, as noted above,
    there is nothing in either party's papers that would tend to
22  dispute the common-sense notion that the Sheriff could delegate
    duties to other senior officials, such as Lewis, Pattison and
23  Brewer.
24
    [15] See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-482 (1986)
25  ("[m]unicipal liability attaches only where the decisionmaker
    possesses final authority to establish municipal policy with
26  respect to the action ordered.   The fact that a particular
    official — even a policymaking official — has discretion in the
27  exercise of particular functions does not, without more, give
    rise to municipal liability based on an exercise of that
28

In sum, defendants' motion to dismiss Claim 2 will be denied.

> **3.    Claim 3: "Unconstitutional Practices / De Facto Policy"**

Claim 3 appears to be identical to Claim 2, except that (i) instead of alleging an official "policy," it alleges "unconstitutional practices / de facto policy," (ii) it names Does 21-30, and (iii) it does not name defendant Pattison, the Jail Commander.  Does 21-30 are alleged to be "responsible for the customs and practices" challenged here.  Because defendants are liable for their actual practices, customs and <u>de facto policies</u>, even if those practices are not officially adopted by formal legislative act, the analysis set forth for Claim 2 also applies here.[16]   See <u>Monell</u>, 436 U.S. at 690 91; <u>Mitchell v.</u>

---

discretion") (emphases added) (footnote omitted); <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 128 (1988) (Plurality Opinion) ("[t]he <u>city</u> cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy") (emphasis added), and 485 U.S. at 142 (Opinion of Brennan, J.) ("[b]ecause the court identified only one unlawfully motivated municipal employee involved in respondent's transfer and layoff, and because that employee did not possess final policymaking authority with  respect to the contested decision, <u>the city</u> may not be held accountable for any constitutional wrong respondent may have  suffered") (emphasis added); <u>Streit</u>, 236 F.3d at 565 ("[w]e therefore affirm the district court's holding that the LASD [L.A. County Sheriff's Department], when functioning as the administrator of the local jail, is a County actor, and that the <u>County</u> may therefore be subject to liability under 42 U.S.C. § 1983") (emphasis added); <u>Cortez</u>, 294 F.3d at 1187 ("[t]he issue in this case is whether the actions of a California sheriff are attributable <u>to the county</u> for purposes of 42 U.S.C. § 1983") (emphasis added).

[16] Defendant does not separately attack Claim 3, apparently recognizing that the same arguments apply to both claims.

1   <u>Dupnik</u>, 75 F.3d 517, 525 (9th Cir. 1996) ("the court correctly …

2   conclude[d] that the Jail's <u>de facto</u> policy of not calling

3   witnesses did not meet the requirements of due process").

4   Accordingly, defendants' motion to dismiss Claim 3 will be

5   denied.

### 4.   Claim 4: "Supervisory Liability"

#### a.   The County.

8       The County seeks dismissal on the grounds that such

9   liability lies <u>only</u> against individual supervisors, and that

10  "supervisory liability is not a cognizable legal theory against

11  the County." Motion at 14.  The County cites no authority that

12  supports this proposition.[17]   However, plaintiff does not defend

13  the claim, instead proffering arguments that would support its

14  claims against the County based upon its allegedly

15  unconstitutional <u>policies</u>.  Those claims are already covered in

16  Claims 2 and 3.  Accordingly, the court will dismiss this claim

17  against the County, rather than explore, without assistance from

18  either party, the issue of whether "supervisory liability" can

19  attach to a county.

#### b.   Individual named defendants.

21       "Supervisory liability is imposed against a supervisory

22  official in his individual capacity for his own culpable action

23  or inaction in the training, supervision, or control of his

24  subordinates, for his acquiescence in the constitutional

25

26  [17] The case cited by the County, <u>Larez v. Los Angeles</u>, 946 F.2d
    630 (9th Cir. 1991) does state that supervisory liability can lie
27  against an individual, but it does not state that such liability
    cannot lie against a municipality or is not cognizable against a
28  municipality.

deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez, 946 F.2d at 646). Accordingly, if the supervisor's training or supervision directly leads to his subordinates' violations, then the supervisor can be held liable for that culpable conduct.

> Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (emphasis added) (internal quotation marks omitted).

The Complaint alleges that each named individual defendant is "responsible for the promulgation of the policies" that resulted in plaintiff's constitutional injury. See Complaint ¶¶ 9-12.[18] Defendants argue that only the Sheriff can make policy, but offers no cases on point, nor any logical reason why those under him cannot also create official or de facto policy applicable to their own subordinates.

Defendants further seek dismissal because, they say, plaintiff has not alleged that the individual defendants had actual knowledge of plaintiff's medical needs. Not so. Plaintiff alleges that before plaintiff was incarcerated,

---

[18] The Complaint also alleges that defendants' deficient training and supervision of the Does caused plaintiff's injury.

1  "defendants had actual notice of both the severity of Orr's
2  medical conditions and the need for him to be housed on both a
3  lower bunk and lower tier."  Complaint ¶ 20.  First, the jail's
4  own medical staff requested that plaintiff be housed on a lower
5  tier and in a lower bunk, based upon his medical needs.  Second,
6  defendants knew that plaintiff specifically required these
7  accommodations, based upon his own prior injury and a prior
8  lawsuit that resulted from his fall from an upper bunk (and the
9  County's failure to summon medical help for him for three days).
10 Third, the defendants knew of past incidents and injuries to
11 other disabled inmates from their not having been housed on the
12 lower tier.[19]

13      Defendants assert that the allegations against the
14 individual defendants are not specific enough under Iqbal, to
15 find supervisory liability.  The court finds that plaintiffs have
16 alleged sufficient facts.  The Complaint alleges that the named
17 supervisory defendants knew that plaintiff had a medical need to
18 be assigned to a lower tier (and a lower bunk) in order to avoid
19 serious injury.  It alleges how they knew this – from a prior
20 incident, and from his medical file.  The Complaint alleges that
21 because of their failure to train and control their subordinates,
22 plaintiff was nevertheless placed into an upper tier cell.  It
23 alleges that plaintiff fell on the stairs, trying to reach his
24 upper-tier cell.  The Complaint alleges that the fall on the
25 stairs could not have occurred if plaintiff had been placed in a
26 lower tier cell.  Defendants assert that these allegations are

27 ────────────────
28 [19] Whether these named individual defendants actually knew any of
this or not, appears to be a matter for discovery.

1  conclusory, but they are in fact very specific factual

2  allegations, sufficient to meet the pleading standard of Fed. R.

3  Civ. P. 8, as interpreted by <u>Twombly</u> and <u>Iqbal</u>.

4      Defendants complain that plaintiff has lumped all the

5  individual defendants together.  That is true, but it is not

6  enough to dismiss the claims against them.  Plaintiff has named

7  the four senior officials who, collectively, are responsible for

8  creating and implementing policies to ensure that his medical

9  needs are seen to, and who, collectively, are alleged to be

10 responsible for ensuring that those policies are carried out.

11 Plaintiff presumably does not currently know exactly which

12 official was responsible for which aspect of the policies.  That

13 would appear to be a matter for plaintiff to learn in discovery,

14 it is not a basis for dismissal.

15     Accordingly, defendants' motion to dismiss Claim 4 will be

16 denied.

17     **B.   Claim 5: Negligence.**

18         Defendants assert that the County cannot be liable for

19 injury caused by its employees, except as provided by statute

20 (Cal. Govt. Code § 815(a)), and plaintiff has not identified the

21 statute making the County liable in this case.  Motion at 16.  It

22 would have been nice if plaintiff had identified the statutory

23 basis for its claim.  However, the statutory basis does exist:

24

25             Public entities are ... liable for the
26             negligent acts or omissions of their
            employees acting within the scope of their
27             employment except where either the employee
            or the public entity is immunized from
28             liability by statute.

21

1  Giraldo v. CDCR, 168 Cal. App. 4th 231, 245 (1st Dist. 2008),

2  citing Cal. Govt. Code § 815.2.

3      Defendants then assert that they are "immune against all

4  claims brought for injuries to any prisoners" under Cal. Govt.

5  Code § 844.6(a).  Motion at 16 (emphasis added).  Of course state

6  law cannot immunize state actions from liability under federal

7  law.  See Martinez v. State of Cal., 444 U.S. 277, 284 n.8 (1980)

8  ("[c]onduct by persons acting under color of state law which is

9  wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized

10  by state law") (internal quotation marks omitted).  That is not

11  the issue as to this cause of action alleging a liability under

12  the state's negligence law.

13      In any event, Section 844.6(a) does provide that "a public

14  entity is not liable for ... [a]n injury to any prisoner."  Cal.

15  Govt. Code § 844.6(a)(2).  Defendant fails to recognize that

16  there are several exceptions to this immunity, and does not

17  address whether any of the exceptions applies here.[20]  Because of

18  those exceptions, defendant is wrong in stating that the County

19  is immune from "all" claims relating to prisoner injuries.

20  Defendant does not even offer a perfunctory "with exceptions not

21  pertinent here ...."

22      Plaintiff responds by citing three cases, rather than simply

23  stating what immunity exceptions apply here.  Plaintiff first

24  cites Lum v. County of San Joaquin, 756 F. Supp. 2d 1243 (E.D.

25  Cal. 2010) (Karlton, J.), and Giraldo, for the proposition that

26  ─────────────

27  [20] For example, the County is liable if its employee "knows or has
    reason to know that the prisoner is in need of immediate medical
    care and he fails to take reasonable action to summon such

28  medical care."  Cal. Govt. Code § 845.6.

1   there is a "special relationship between jailer and prisoner

2   which imposes a duty of care on the jailer to the prisoner."

3   Opposition at 5.  However, as Lum noted, finding a duty of care

4   is conceptually distinct from the possible applicability of any

5   immunity:

6       "Conceptually, the question of the applicability of a
        statutory immunity does not even arise until it is
7       determined that a defendant otherwise owes a duty of
        care to the plaintiff and thus would be liable in the
8       absence of such immunity." Davidson v. City of
        Westminster, 32 Cal. 3d 197, 201–02 (1982).
9

10

11  Id., at 1253-54.  Thus, merely citing those cases does not

12  address whether the County is immune under Section 844.6.

13  Plaintiff next cites C.A. v. William S. Hart Union High School

14  District, 53 Cal. 4th 861, 865 (2012), apparently also for the

15  "special relationship" between "inmates and jailers" point.

16  Opposition at 5.  However, Hart addressed the "special

17  relationship" a high school has with its students.  No matter

18  what high school students may think, this court knows of no legal

19  basis for concluding that they are "prisoners" of the school

20  within the meaning of Section 844.6.  Thus, merely citing this

21  case, as plaintiff does, does not address whether the Section

22  844.6 immunity applies here.

23      In short, defendant cites an immunity statute, Section

24  844.6, as if it applies in every single case, without mentioning

25  that it has exceptions, and without asserting that none of the

26  exceptions applies.  Then, plaintiff states that defendants are

27  not immune, but without asserting that any of the immunity

28  exceptions applies.  Rather than delving into the intricacies of

state immunity law under Section 844.6 (or re-writing both the Complaint and the motion to dismiss, on behalf of the parties), the court will deny the motion to dismiss, as it is predicated upon defendants' plainly false assertion: that the County is immune from "all" claims of injuries to prisoners.

**C.   Claim 6: Americans with Disabilities Act.**

Title II of the ADA prohibits public entities from discriminating against a "qualified individual with a disability," and from doing so "by reason of such disability." 42 U.S.C. § 12132.  The federal regulations implementing Title II require public entities to "ensure that inmates ... with disabilities are housed in the most integrated setting appropriate to the needs of the individuals."   28 C.F.R. § 35.152(b)(2) (emphasis added).

To state a claim under Title II, for failure to accommodate a disability, plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010).


**1.   County of Sacramento.**

Defendants assert that plaintiff's factual allegations are

1  not specific enough under Iqbal and Twombly, to state a claim

2  against the County.  They argue that plaintiff's allegations are

3  mere "legal conclusions," that the allegations do not show that

4  plaintiff is disabled, and do not show that he suffered injury by

5  reason of his disability.

6      Plaintiff's allegations are not mere legal conclusions, they

7  are very fact-specific.  He alleges that he has "serious medical

8  issues" which include diabetes, a seizure disorder and "bilateral

9  hip replacements."  Neither party explains why this does – nor

10  why this does not – make plaintiff a qualified individual with a

11  disability.  The implementing regulations define "disability" to

12  be:

13
        a physical or mental impairment that substantially
14      limits one or more of the major life activities of such
        individual; a record of such an impairment; or being
15      regarded as having such an impairment.

16  28 C.F.R. § 35.104 ("disability").  Major life activities include

17  "walking," and physical impairments include "anatomical loss

18  affecting ... the ... musculoskeletal" system.  Id. at (1)(i) and

19  (2).  The allegations appear to meet this definition: plaintiff

20  has serious medical conditions, including bilateral hip

21  replacements, that prevent him from walking up stairs without

22  falling.

23      Plaintiff goes on to allege that his disability required a

24  specific accommodation: that he be housed on a lower tier (and in

25  a lower bunk).[21]  He alleges that upon his incarceration, medical

26

27  [21] Plaintiff spends much time on defendants' failure to place him,
    and others, in lower bunks.  However, there is no allegation that
28  he was injured in any way by this failure.

personnel requested that he be accommodated by being housed on a lower tier (and a lower bunk).   He alleges that this need for accommodation, and the recommendation for accommodation were ignored, and that he was housed on an upper tier.   Plaintiff alleges that by reason of this placement, he fell while climbing the steps to his upper tier cell, and was injured.   This is enough to state a claim for failure to accommodate under Title II.   See Pierce v. County of Orange, 526 F.3d 1190, 1224 (9th Cir.) (prisoner stated a Title II claim for failure to accommodate when he alleged that "he was denied an adequate supply of catheters, and as a result suffered recurrent bladder infections," and that "he was not provided a proper mattress given his disability, and as a result developed bed sores"), cert. denied, 555 U.S. 1031 (2008).

The court will deny the County's motion to dismiss Claim 5.

### 2.   Individual defendants.

Defendants assert that a Title II ADA claim may only be brought against a public entity, not individual defendants. Motion at 18.   Plaintiffs concede the point.   Opposition at 5. The concession is well-taken, since "Section 202 of the ADA prohibits discrimination against the disabled by public entities."   Barnes v. Gorman, 536 U.S. 181, 184 (2002) (emphasis added).   The ADA claim will be dismissed against all individual named and Doe defendants in their official and individual capacities.

////

////

26

**D.   Individual defendants sued in their "official" capacities.**

Defendants argue that all the claims against the individuals in their "official" capacities should be dismissed, because such claims are really claims against the municipality, and that naming the individuals is redundant.  Defendants are correct that "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."  Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2008) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)), cert. denied, 555 U.S. 10987 (2009).  Therefore, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  Id. (emphasis added).  In Center for Bio-Ethical Reform, defendant Sheriff Baca was sued only in his official capacity, and only for injunctive relief.  Id., at 780 & 786.  Accordingly, the Ninth Circuit affirmed the district court's dismissal of defendant Baca as "a redundant defendant."  Id. at 799.

The only other case defendants cite for this point is Armstrong v. Siskiyou County Sheriff's Dept., 2009 WL 4572879, 2009 U.S. Dist. LEXIS 111606 (E.D. Cal. 2009) (Burrell, J.), aff'd mem., 420 F3d. Appx. 741 (9th Cir. 2011).  Defendants there were sued in both their individual and official capacities.  However, the claims against the defendants in their individual capacities had been dismissed on immunity grounds, so that the only remaining claims against them were in their official

1 capacities.  In that circumstance, the district court dismissed
2 the official capacity claims against defendants as "redundant."

3     It appears, then, that if the only surviving claims are
4 against the municipality and the individuals in their official
5 capacities, the court may dismiss the official capacity suits as
6 redundant.  That is not the situation for any of the claims here.
7 Accordingly, defendants' motion to dismiss them in their official
8 capacities will be denied.

9     **IV.   SUMMARY**

10     For the reasons stated above:

11     1.  The court **CONSTRUES** Claim 1 (Section 1983,
12 direct liability), to assert claims against Does 1-10, only.  To
13 the degree Claim 1 asserts claims against the County and/or the
14 individual named defendants, their motion to dismiss Claim 1 is
15 **GRANTED;**

16     2.  Defendants' motion to dismiss Claim 2
17 (Section 1983, based upon official policy), is **DENIED;**

18     3.  Defendants' motion to dismiss Claim 3
19 (Section 1983, based upon custom, practice and de facto policy),
20 is **DENIED;**

21     4.  Defendants' motion to dismiss Claim 4
22 (Section 1983, based upon supervisory liability), is **GRANTED** as
23 to the County, and is otherwise DENIED;

24     5.  Defendants' motion to dismiss Claim 5
25 (negligence), is **DENIED**; and

26     6.  Defendants' motion to dismiss Claim 6 (ADA)
27 is **GRANTED** as to all individual defendants, and is otherwise
28 **DENIED.**

1     IT IS SO ORDERED.

2     DATED:   August 23, 2013.

3

4

5

6                          LAWRENCE K. KARLTON

7                          SENIOR JUDGE
                           UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28