1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MARVIN ORR,                          No. CIV. S-13-0839 LKK/AC

12              Plaintiff,

13        v.                              **ORDER**

14   COUNTY OF SACRAMENTO;
     Sacramento County Sheriff's
15   Department Sheriff SCOTT
     JONES; Sacramento Main Jail
16   Commander RICHARD PATTISON;
     Sacramento County Sheriff's
17   Department Chief of
     Correctional and Court
18   Services JAMIE LEWIS;
     Sacramento County Chief of
19   Correctional Health Services
     AARON BREWER; and DOES 1
20   through 30, inclusive,

21              Defendants.

22

23   **I.   BACKGROUND**[1]

24        Plaintiff, an inmate at the Sacramento County Main Jail has

25   "a history of serious medical issues," including diabetes, a

26   seizure disorder, arthritis and joint problems, and had undergone

27   _____

[1] The background facts are as alleged in the Complaint (ECF No.
28   1).

                                     1

1  bilateral hip replacements.  Complaint (ECF No. 1) ¶¶ 4, 19.  As

2  a consequence, plaintiff alleges that he "is a qualified

3  individual pursuant to the Americans with Disabilities Act who

4  required accommodations."  Id. ¶ 19.  Plaintiff alleges that he

5  required an accommodation of being housed on a lower tier (and on

6  a lower bunk) at the jail.  Id. ¶ 20.

7      Plaintiff was placed in custody at the Sacramento County

8  Main Jail on June 6, 2012, to finish out a misdemeanor term.  Id.

9  ¶ 19.  The medical staff, recognizing plaintiff's medical needs,

10  generated two "Miscellaneous Medical Needs forms" on June 6 and

11  7, 2012, stating that plaintiff "needed both lower bunk and lower

12  tier housing for the length of his stay."  Complaint ¶ 21.

13      Notwithstanding plaintiff's need for accommodation and the

14  medical staff's request that he be accommodated, plaintiff "was

15  housed on 6West on an upper bunk in an upper tier cell."

16  Complaint ¶ 22.  On June 14, 2012, plaintiff fell while walking

17  up the stairs to his upper tier cell.  Complaint ¶ 23.  Plaintiff

18  suffered no broken bones, but he did suffer an unspecified

19  "personal injury," as well as "pain and suffering, emotional

20  distress and mental anguish."  Complaint ¶¶ 25 & 35.  After the

21  fall, and after plaintiff's attorney intervened, plaintiff was

22  "finally given the medically required housing."  Complaint ¶ 24.

23      Plaintiff filed this lawsuit under 42 U.S.C. § 1983,

24  alleging an Eighth Amendment violation for deliberate

25  indifference to his serious medical needs, Title II of the

26  Americans with Disabilities Act, 42 U.S.C. § 12132, for failure

27  to accommodate him, and California state law, for negligence.

28  The suit names the County, the named individual defendants, and

2

1  unknown "Does," as defendants.   The named individual defendants

2  are Scott Jones, the County Sheriff, Richard Pattison, the County

3  Jail Commander, Jamie Lewis, the Sheriff's Chief of Correctional

4  and Court Services, and Aaron Brewer, the County Chief of

5  Correctional Health Services.   The named individual defendants

6  are each sued in their official and their individual capacities.

7      Defendants move to dismiss all claims against all

8  defendants, for failure to state a claim.

9  **II.   DISMISSAL STANDARD**

10      A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges

11  a complaint's compliance with the federal pleading requirements.

12  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short

13  and plain statement of the claim showing that the pleader is

14  entitled to relief."   The complaint must give the defendant

15  "'fair notice of what the ... claim is and the grounds upon which

16  it rests.'"   Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007),

17  quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

18      To meet this requirement, the complaint must be supported by

19  factual allegations.   Ashcroft v. Iqbal, 556 U.S. 662, 678, 129

20  S. Ct. 1937 (2009).   Moreover, this court "must accept as true

21  all of the factual allegations contained in the complaint."

22  Erickson v. Pardus, 551 U.S. 89, 94 (2007).[2]

23      "While legal conclusions can provide the framework of a

24  _____

25  [2] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490
U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance

26  are dismissals based on a judge's disbelief of a complaint's
factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236

27  (1974) ("it may appear on the face of the pleadings that a
recovery is very remote and unlikely but that is not the test"

28  under Rule 12(b)(6)).

complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. <u>Iqbal</u>, 556 U.S. at 679. <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).[3] A complaint may fail to show a right to relief either

---

[3] <u>Twombly</u> imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of <u>Conley</u>, although it did not overrule that case outright. <u>See Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright overruling <u>Conley</u> ...," although it was retiring the "no set of facts" language from <u>Conley</u>). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. <u>See Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 2101 (2012). <u>Starr</u> compared the Court's application of the "original, more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (<u>per curiam</u>), with the seemingly

by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS**

**A.   Eighth Amendment Claims under 42 U.S.C. § 1983.**

Plaintiff's first four claims are brought pursuant to 42 U.S.C. § 1983.   That statute provides a remedy for plaintiff if his federal constitutional right has been violated by a "person" acting under color of law.  42 U.S.C. § 1983.  The County is a "person" subject to liability under Section 1983.  <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1185 (9th Cir. 2002) (regarding county's Section 1983 liability for deliberate indifference to inmate's medical needs), <u>cert. denied</u>, 537 U.S. 1106 (2003) (<u>quoting</u> <u>Monell v. Dept. of Soc. Svcs.</u>, 436 U.S. 658, 689 (1978)).[4]

Plaintiff's underlying constitutional claim is that defendants violated his Eighth Amendment right to be free from cruel and unusual punishments, by virtue of their deliberate indifference to his serious medical needs.

To state the underlying constitutional claim, the Complaint must allege first, a "serious medical need," and second, that defendants' response to the need was deliberately indifferent.

---

"higher pleading standard" in <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and <u>Iqbal</u>.  See also <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

[4] However, defendants are correct that the County "may not be held liable under a respondeat superior theory."  <u>Gibson</u>, 290 F.3d at 1185.

1   Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012) (plaintiff

2   stated a Section 1983 for deliberate indifference stemming from

3   defendants' failure to follow medical directives that plaintiff

4   be placed on a lower bunk).[5]   The second prong, "deliberate

5   indifference" is shown by: (a) defendants' purposeful act or

6   failure to respond to a prisoner's pain or possible medical

7   need;[6] or (b) harm caused by the indifference.   Id.

8       Defendants assert that the claim against the County "solely

9   alleges liability based on individual conduct of ignoring

10  plaintiff's medical needs," and is thus a prohibited respondeat

11  superior claim under Monell.   Motion at 11.   They move to dismiss

12  the named individual defendants on the grounds that no "personal

13  involvement" is alleged.   Motion at 7, 10-12.   Plaintiff opposes

14  the motion.[7]

15          **1.   Claim 1: "Deliberate Indifference."**

16      Claims 1 to 4 are Section 1983 claims in which plaintiff

17  alleges that his Eighth Amendment rights were violated.   The

18  claims all arise out of the same basic set of facts.   In Claim 1,

19  the Complaint alleges that employees at the Sacramento County

20  Main Jail assigned plaintiff to housing in the upper tier (and on

21

22  [5] Citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

23  [6] Plaintiff's "allegations of deliberate indifference to his
24  medical condition were sufficient to satisfy the pleading
    requirement."   Akhtar, 698 F.3d at 1214.

25  [7] Defendants assert that "Plaintiff does not oppose Defendants
26  Jones, Pattison, Lewis, and Brewer's motion to dismiss the first
    claim.   Therefore the individual defendants should be dismissed."
27  However, plaintiff does oppose dismissal of the First Claim
    against defendants in their individual capacities, as well as
28  their official capacities.

1  an upper bunk), which directly led to his injury when he fell
2  while climbing the stairs to the upper tier.  Defendants did so,
3  plaintiff alleges, with deliberate indifference to his serious
4  medical needs, which necessitated that he be housed on the lower
5  tier (and on a lower bunk).

6       Because Claims 2, 3 and 4 allege liability for this same
7  conduct, but based upon an "Unconstitutional Policy,"
8  "Unconstitutional Practices/De Facto Policy," and "Supervisory
9  Liability," the court will construe Claim 1 as alleging direct
10 liability only against those who actually made the upper tier
11 assignment and who actually housed plaintiff there.  The specific
12 defendants who actually engaged in this conduct are alleged to be
13 Does 1-10, only.  See Complaint ¶ 13.

14      The Complaint is clear in alleging that the named individual
15 defendants were responsible for "training and supervision" of the
16 Doe defendants, but that it was "[t]hose Does" -- not the named
17 individual defendants -- who "failed to implement the lower tier,
18 lower bunk housing recommendation or properly classify Orr's cell
19 and bedding assignment."  Complaint ¶¶ 9, 10, 12, 13.  There is
20 nothing in the "Factual Allegations" portion of the Complaint
21 that alleges or implies that the County of Sacramento itself, or
22 any of the named individual defendants actually assigned or
23 housed plaintiff on the upper tier.  Thus, the liability of the
24 County and the named individual defendants are addressed in the
25 following Claims, which allege liability through policy, custom
26 and practice, and through supervision of the Does by the named
27 individual defendants.

28      Accordingly, the court will construe Claim 1 to assert

7

liability only against Does 1-10, but not against the County or the individual named defendants.   To the degree the Complaint alleges a claim against the County or the individual named defendants, those defendants' motion to dismiss Claim 1 will be granted.

### 2.   Claim 2:  "Unconstitutional Policy."

Claim 2 alleges that the unconstitutional conduct alleged in Claim 1 was "the direct and proximate result of policies" promulgated by the County, all the named individual defendants, and Does 16-20.   Does 16-20 are those County employees who were allegedly "responsible for the promulgation of the policies and procedures" under constitutional attack here.   Complaint ¶ 15. Further, the Complaint alleges, those policies "were a direct and proximate cause of plaintiff's injuries."   Id. ¶¶ 44 45.   These allegations properly state a Section 1983 claim against the cited defendants, as discussed below.   Since plaintiff divides up the "policy, practice and custom" claim into one entitled "Unconstitutional Policy" (Claim 2) and one entitled "Unconstitutional Practices/De Facto Policy" (Claim 3), the court will construe Claim 2 as attacking only "official" County policy, and address practice, custom and "de facto" policies in Claim 3. Moreover, the only Does named in Claim 2 are Does 16-20, who "were responsible for the promulgation of the policies and procedure."[8]

_____

[8] They are also alleged to have "permitted the customs/practices pursuant to which the acts alleged herein were committed." Complaint ¶ 15.   This latter allegation seems to undo plaintiff's attempt to finely segregate each aspect of the Section 1983 claim.   To keep things relatively simple, the court will leave these allegations for the claim that addresses customs and

1

### a.   The County.

2    There are at least "two routes" to County Monell liability

3    under Section 1983: (1) the County itself violated plaintiff's

4    rights, or directed its employees to do so, acting with the

5    required state of mind; or (2) the County is responsible for a

6    constitutional tort committed by its employee.  Gibson, 290 F.3d

7    at 1185 87 (describing "two routes" to municipal liability under

8    Section 1983).[9]

9    Plaintiff's underlying constitutional claim is that

10   defendants violated his Eighth Amendment rights by deliberate

11   indifference to his serious medical needs.  "A public official's

12   'deliberate indifference to a prisoner's serious illness or

13   injury' violates the Eighth Amendment ban against cruel

14   punishment."  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir.

15   2002), quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976).

16                        **(1)   Route 1.**

17   Under the first route to municipal liability, "a

18   municipality may be liable under § 1983, just as natural persons

19   are, because when Congress enacted § 1983 it 'intend[ed]

20   municipalities and other local government units to be included

21   among those persons to whom § 1983 applies.'"  Id. (quoting

22   Monell, 436 U.S. at 689).  To be liable under this route, the

23   municipality must have "acted with 'the state of mind required to

24   prove the underlying violation,' just as a plaintiff does when he

25   or she alleges that a natural person has violated his federal

26   _____

practices (Claim 3).

27

28   [9] Citing Board of County Comm'rs v. Brown, 520 U.S. 397, 404, 406-07 (1994) and Canton v. Harris, 489 U.S. 378, 387 (1989)).

9

1    rights.'" Id. (quoting Board of County Comm'rs, 520 U.S. at 405).

2        The municipality can "act" through an official policy-making

3    mechanism, such as a local ordinance.  Monell, 436 U.S. at 690

4    (municipality may be liable under Section 1983 for "action that …

5    implements or executes a policy statement, ordinance, regulation,

6    or decision officially adopted and promulgated by that body's

7    officers").  Alternatively, the County can "act" through the

8    actions of its "authorized decision-maker."  Thompson, 885 F.2d

9    at 1443.  Thus:

10           [m]unicipal liability under Monell is established where "the
             appropriate officer or entity promulgates a generally
11           applicable statement of policy and the subsequent act
             complained of is simply an implementation of that policy."
12           Bd. of County Comm'rs v. Brown, 520 U.S. 397, 417 (1997).
             Such a policy may either be "explicitly adopted" or "tacitly
13           authorized."

14   Harper v. City of Los Angeles, 533 F.3d 1010, 1024 (9th Cir.

15   2008) (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th

16   Cir. 1986), cert. denied, 479 U.S. 1054 (1987)).

17       The "underlying violation" here is an Eighth Amendment

18   violation allegedly arising from the County's deliberate

19   indifference to plaintiff's serious medical needs.  To be liable,

20   the County must have: (1) "had a policy that posed a substantial

21   risk of serious harm;" and (2) "known that its policy posed this

22   risk."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

23   To survive dismissal of a Section 1983 deliberate indifference

24   claim against the County based upon an unconstitutional policy,

25   the Complaint must allege that the County's policy "posed a

26   substantial risk of serious harm" to plaintiff.  See Gibson

27   (county's Section 1983 liability for deliberate indifference to

28
                                  10

1    inmate's medical needs).

2         As for the County's "knowledge," it can be liable only if it

3    "'knows of and disregards an excessive risk to inmate health and

4    safety.'" Id. at 1187 (quoting Farmer, 511 U.S. at 841). If the

5    County is actually aware of "a substantial risk of serious harm,"

6    it will be "liable for neglecting a prisoner's serious medical

7    needs" on the basis of either its "action" or its "inaction."

8    Id. (citing Farmer, 511 U.S. at 842).

9         The Complaint sufficiently alleges a County policy that

10   posed a substantial risk of serious harm.   It specifically

11   alleges that the Sacramento County Sheriff's Department: (1) has

12   "a custom and practice of ignoring lower tier, lower bunk

13   recommendations" from its own medical staff; and (2) has a de

14   facto policy of "systemic failure to accommodate the serious

15   medical needs of inmates at the Sacramento County Main Jail

16   specifically related to their needs of lower bunk, lower tier

17   housing assignments."   Complaint ¶¶ 26 & 34(b).   Further, it

18   alleges that the lawsuit was filed to address "the systemic and

19   on-going failure of the Sacramento County Main Jail to properly

20   accommodate the special medical needs of inmates and detainees

21   and particularly as they relate to lower bunk, lower tier

22   recommendations."   Complaint ¶ 3.

23        The Complaint also sufficiently alleges that the County

24   "knew" that its policy posed the risk of substantial harm.[10]

25   _____

26   [10] The cases acknowledge the difficulty of discerning what a
     municipality "knows," but it can be determined by reference to
27   the state of mind of its policymakers "who are, of course,
     natural persons."   See Gibson, 290 F.3d at 1189 n.10.
28

Specifically, the County knew its policies posed this risk because its own medical staff recommended, upon plaintiff's being taken into custody at the jail, and on two separate occasions, that because of plaintiff's medical condition, he should be housed on the lower tier.  In addition, the Complaint alleges that other disabled inmates have suffered similar injuries at the same jail, arising from "being improperly placed on upper bunks and/or upper tiers in disregard of medical advice and/or obvious medical needs."  Complaint ¶¶ 31 & 32.  It goes on to allege that these prior injuries led to hospitalizations for those inmates and/or prior litigation by them.[11]

Finally, the Complaint sufficiently alleges that this County policy is what led, directly and proximately, to plaintiff's injury, since it was its directive to ignore the medical recommendation that led to plaintiff's fall while climbing to the upper tier.

In sum, the Complaint sufficiently alleges that the County's employees' failure to assign plaintiff to lower tier housing was the direct result of a County policy to ignore the medical recommendations of its own staff in regard to housing disabled inmates.  The County's deliberate indifference, in addition to being alleged specifically, can be inferred from the policy itself: ignore the medical recommendations of its own medical staff on where to house disabled inmates.

### (2)  Route 2.

---

[11] The Complaint also alleges that previously, plaintiff himself was injured as a result of this policy, leading to litigation, although that injury is alleged to have resulted from assignment to a higher bunk, rather than housing on the higher tier.

12

Another route to municipal liability is through the conduct of its employees, even where the County did not commit the violation itself, nor direct its employee to do so.  Under this route, the County can be liable if (1) a County employee violated plaintiff's rights, (2) the County has policies (or "customs," discussed in Claim 3), that amount to deliberate indifference (as that phrase is defined by <u>Canton</u>), and (3) these policies were the "moving force" behind the employee's violation of plaintiff's constitutional rights, in the sense that the County could have prevented the violation with an appropriate policy.  <u>Gibson</u>, 290 F.3d at 1193-94 (<u>citing</u> <u>Amos v. City of Page</u>, 257 F.3d 1086, 1094 (9th Cir. 2001)).

> **(a)  Allegations that a County employee violated plaintiff's Eighth Amendment rights.**

The Complaint specifically alleges that unknown County employees (Does 1-10), ignored his need to be accommodated with a lower tier housing assignment, and instead placed him on an upper tier.  <u>See</u> Complaint ¶¶ 9-16. It alleges that these Does did this out of deliberate indifference to his serious medical needs, and ignoring the specific recommendation from jail medical personnel that he be housed on the lower tier.  <u>Id.</u>  The Complaint further alleges that this conduct directly led to plaintiff's injury, in that the failure to house him on the lower tier despite his medical conditions, forced him to climb the stairs to the upper tier, resulting in his fall.  <u>Id.</u> ¶¶ 23, 35 & 38.

////

////

**(b)   Allegations of County customs and policies amounting to deliberate indifference.**

The Complaint sufficiently alleges the existence of an official County policy amounting to deliberate indifference, as set forth above.   The County's alleged policy of ignoring the recommendations of its own medical staff on how disabled inmates should be housed, is plainly a policy of deliberate indifference.

**(c)   Allegations of County policy as the moving force behind the violation.**

The Complaint sufficiently alleges that the County's policy was the moving force behind the alleged constitutional violation. It alleges that the policy was to ignore medical recommendations that an inmate be housed in a lower tier.   It was pursuant to this policy that plaintiff was housed in the upper tier despite a medical recommendation to the contrary.   No other motivation is alleged or can reasonably be inferred from the complaint. Further, the Complaint alleges that plaintiff's injury was the direct and proximate result of this policy and its implementation by the Does.   Further, it may reasonably be inferred from the Complaint that if the County had a policy in place to <u>follow</u> the medical recommendations of its medical staff (rather than ignore them), plaintiff's injury would not have occurred.

The Complaint sufficiently alleges County liability under both routes set forth in <u>Gibson</u>.   Accordingly, the County's motion to dismiss Claim 2 will be denied.

14

**b.   Individual named defendants.**

The individual named defendants assert that plaintiff fails to allege their personal involvement in plaintiff's constitutional deprivation, as required by <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010) ("[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). However, the Complaint <u>does</u> allege these defendants' personal involvement, namely, that they "promulgated" the unconstitutional policies that led directly to plaintiff's injury. Complaint ¶¶ 9-12.

Defendants' response to the charge that they promulgated the challenged policies seems to be that only the Sheriff could have promulgated any "official county policy" regarding the jail and the "safekeeping of inmates" there, and that defendants Lewis, Pattison and Brewer should therefore be dismissed from this claim. Motion at 13-14. In support, defendants cite Cal. Penal Code § 4000 and Cal. Gov't Code § 26605. It is correct that "[t]he sheriffs have exclusive responsibility for running the county jails," <u>Streit v. County of Los Angeles</u>, 236 F.3d 552, 567 (9th Cir.), <u>cert. denied</u>, 534 U.S. 823 (2001) (citing Cal. Gov't Code § 26605), and that the county jails are "kept" by the County Sheriff. However, defendant has identified nothing in either statute, or any case, that would counter the common-sense notion that the Sheriff could delegate duties to other senior officials, such as Lewis, Pattison and Brewer. <u>See, e.g.</u>, <u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968, 985 (9th Cir. 2002) (municipal liability can be based upon the action of a non-final policy-maker if "an official with final policymaking

15

1   authority either delegated that authority to, or ratified the

2   decision of, a subordinate") (emphasis added).[12]

3        Defendants also cite <u>Thompson v. City of Los Angeles</u>, 885

4   F.2d 1439, 1446 (9th Cir. 1989),[13] and other cases for the

5   proposition that defendants other than the Sheriff cannot be held

6   liable for promulgating policies.  However, <u>Thompson</u> was a suit

7   against California and the City and County of Los Angeles.  It

8   did not involve the liability of any individual, and sheds no

9   light on defendants' argument here.[14]  The other cases cited by

10  defendants similarly address whether the <u>municipality</u> may be held

11  liable based upon the decisions or actions of municipal officers,

12  not whether the officers themselves may be held liable.[15]

---

[12] Nor have defendants asserted or argued that policymakers
themselves cannot be held liable for unconstitutional policies
they promulgate.  <u>See, e.g.</u>, <u>Cabrales v. County of Los Angeles</u>,
864 F.2d 1454 (9th Cir. 1988) (affirming jury verdict against
county and its policymaker) (this decision was <u>vacated</u> at 490
U.S. 1087 (1989), but <u>reinstated</u> at 886 F.2d 235 (9th Cir. 1989),
<u>cert.</u> <u>denied</u>, 494 U.S. 1091 (1990)).

[13] <u>Overruled on other grounds by</u> <u>Bull v. City and County of San
Francisco</u>, 595 F.3d 964 (9th Cir. 2010) (<u>en banc</u>).

[14] Defendants have not argued that the <u>County</u> cannot be liable
based upon the purported inability of defendants Lewis, Pattison
and Brewer – that is, anyone other than the Sheriff – to
promulgate an "official" policy."  In any event, as noted above,
there is nothing in either party's papers that would tend to
dispute the common-sense notion that the Sheriff could delegate
duties to other senior officials, such as Lewis, Pattison and
Brewer.

[15] <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481-482 (1986)
("<u>[m]unicipal liability</u> attaches only where the decisionmaker
possesses final authority to establish municipal policy with
respect to the action ordered.  The fact that a particular
official — even a policymaking official — has discretion in the
exercise of particular functions does not, without more, give
rise to <u>municipal liability</u> based on an exercise of that

16

1    In sum, defendants' motion to dismiss Claim 2 will be

2 denied.

3         **3.    Claim 3: "Unconstitutional Practices / De Facto**
          **Policy"**

4

5    Claim 3 appears to be identical to Claim 2, except that (i)

6 instead of alleging an official "policy," it alleges

7 "unconstitutional practices / de facto policy," (ii) it names

8 Does 21-30, and (iii) it does not name defendant Pattison, the

9 Jail Commander.  Does 21-30 are alleged to be "responsible for

10 the customs and practices" challenged here.  Because defendants

11 are liable for their actual practices, customs and <u>de facto</u>

12 <u>policies</u>, even if those practices are not officially adopted by

13 formal legislative act, the analysis set forth for Claim 2 also

14 applies here.[16]  See <u>Monell</u>, 436 U.S. at 690 91; <u>Mitchell v.</u>

15

16 discretion") (emphases added) (footnote omitted); <u>City of St.</u>
<u>Louis v. Praprotnik</u>, 485 U.S. 112, 128 (1988) (Plurality Opinion)

17 ("[t]he <u>city</u> cannot be held liable under § 1983 unless respondent
proved the existence of an unconstitutional municipal policy")

18 (emphasis added), and 485 U.S. at 142 (Opinion of Brennan, J.)
("[b]ecause the court identified only one unlawfully motivated

19 municipal employee involved in respondent's transfer and layoff,
and because that employee did not possess final policymaking

20 authority with  respect to the contested decision, <u>the city</u> may
not be held accountable for any constitutional wrong respondent

21 may have  suffered") (emphasis added); <u>Streit</u>, 236 F.3d at 565
("[w]e therefore affirm the district court's holding that the

22 LASD [L.A. County Sheriff's Department], when functioning as the
administrator of the local jail, is a County actor, and that the

23 <u>County</u> may therefore be subject to liability under 42 U.S.C. §
1983") (emphasis added); <u>Cortez</u>, 294 F.3d at 1187 ("[t]he issue

24 in this case is whether the actions of a California sheriff are
attributable <u>to the county</u> for purposes of 42 U.S.C. § 1983")

25 (emphasis added).

26

27 [16] Defendant does not separately attack Claim 3, apparently
recognizing that the same arguments apply to both claims.

28

1   Dupnik, 75 F.3d 517, 525 (9th Cir. 1996) ("the court correctly …

2   conclude[d] that the Jail's de facto policy of not calling

3   witnesses did not meet the requirements of due process").

4   Accordingly, defendants' motion to dismiss Claim 3 will be

5   denied.

6   **4.   Claim 4: "Supervisory Liability"**

7   **a.   The County.**

8        The County seeks dismissal on the grounds that such

9   liability lies only against individual supervisors, and that

10  "supervisory liability is not a cognizable legal theory against

11  the County." Motion at 14.   The County cites no authority that

12  supports this proposition.[17]   However, plaintiff does not defend

13  the claim, instead proffering arguments that would support its

14  claims against the County based upon its allegedly

15  unconstitutional policies.   Those claims are already covered in

16  Claims 2 and 3.   Accordingly, the court will dismiss this claim

17  against the County, rather than explore, without assistance from

18  either party, the issue of whether "supervisory liability" can

19  attach to a county.

20  **b.   Individual named defendants.**

21       "Supervisory liability is imposed against a supervisory

22  official in his individual capacity for his own culpable action

23  or inaction in the training, supervision, or control of his

24  subordinates, for his acquiescence in the constitutional

25

26  [17] The case cited by the County, Larez v. Los Angeles, 946 F.2d
    630 (9th Cir. 1991) does state that supervisory liability can lie
27  against an individual, but it does not state that such liability
    cannot lie against a municipality or is not cognizable against a
28  municipality.

deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez, 946 F.2d at 646). Accordingly, if the supervisor's training or supervision directly leads to his subordinates' violations, then the supervisor can be held liable for that culpable conduct.

> Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (emphasis added) (internal quotation marks omitted).

The Complaint alleges that each named individual defendant is "responsible for the promulgation of the policies" that resulted in plaintiff's constitutional injury. See Complaint ¶¶ 9-12.[18] Defendants argue that only the Sheriff can make policy, but offers no cases on point, nor any logical reason why those under him cannot also create official or de facto policy applicable to their own subordinates.

Defendants further seek dismissal because, they say, plaintiff has not alleged that the individual defendants had actual knowledge of plaintiff's medical needs. Not so. Plaintiff alleges that before plaintiff was incarcerated,

---

[18] The Complaint also alleges that defendants' deficient training and supervision of the Does caused plaintiff's injury.

"defendants had actual notice of both the severity of Orr's medical conditions and the need for him to be housed on both a lower bunk and lower tier." Complaint ¶ 20. First, the jail's own medical staff requested that plaintiff be housed on a lower tier and in a lower bunk, based upon his medical needs. Second, defendants knew that plaintiff specifically required these accommodations, based upon his own prior injury and a prior lawsuit that resulted from his fall from an upper bunk (and the County's failure to summon medical help for him for three days). Third, the defendants knew of past incidents and injuries to other disabled inmates from their not having been housed on the lower tier.[19]

Defendants assert that the allegations against the individual defendants are not specific enough under <u>Iqbal</u>, to find supervisory liability. The court finds that plaintiffs have alleged sufficient facts. The Complaint alleges that the named supervisory defendants knew that plaintiff had a medical need to be assigned to a lower tier (and a lower bunk) in order to avoid serious injury. It alleges how they knew this – from a prior incident, and from his medical file. The Complaint alleges that because of their failure to train and control their subordinates, plaintiff was nevertheless placed into an upper tier cell. It alleges that plaintiff fell on the stairs, trying to reach his upper-tier cell. The Complaint alleges that the fall on the stairs could not have occurred if plaintiff had been placed in a lower tier cell. Defendants assert that these allegations are

---

[19] Whether these named individual defendants actually knew any of this or not, appears to be a matter for discovery.

conclusory, but they are in fact very specific factual allegations, sufficient to meet the pleading standard of Fed. R. Civ. P. 8, as interpreted by <u>Twombly</u> and <u>Iqbal</u>.

Defendants complain that plaintiff has lumped all the individual defendants together.   That is true, but it is not enough to dismiss the claims against them.   Plaintiff has named the four senior officials who, collectively, are responsible for creating and implementing policies to ensure that his medical needs are seen to, and who, collectively, are alleged to be responsible for ensuring that those policies are carried out. Plaintiff presumably does not currently know exactly which official was responsible for which aspect of the policies.   That would appear to be a matter for plaintiff to learn in discovery, it is not a basis for dismissal.

Accordingly, defendants' motion to dismiss Claim 4 will be denied.

**B.   Claim 5: Negligence.**

Defendants assert that the County cannot be liable for injury caused by its employees, except as provided by statute (Cal. Govt. Code § 815(a)), and plaintiff has not identified the statute making the County liable in this case.   Motion at 16.   It would have been nice if plaintiff had identified the statutory basis for its claim.   However, the statutory basis does exist:

> Public entities are ... liable for the negligent acts or omissions of their employees acting within the scope of their employment except where either the employee or the public entity is immunized from liability by statute.

21

1   <u>Giraldo v. CDCR</u>, 168 Cal. App. 4th 231, 245 (1st Dist. 2008),

2   <u>citing</u> Cal. Govt. Code § 815.2.

3        Defendants then assert that they are "immune against <u>all</u>

4   claims brought for injuries to any prisoners" under Cal. Govt.

5   Code § 844.6(a).  Motion at 16 (emphasis added).  Of course state

6   law cannot immunize state actions from liability under federal

7   law.  See <u>Martinez v. State of Cal.</u>, 444 U.S. 277, 284 n.8 (1980)

8   ("[c]onduct by persons acting under color of state law which is

9   wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized

10  by state law") (internal quotation marks omitted).  That is not

11  the issue as to this cause of action alleging a liability under

12  the state's negligence law.

13       In any event, Section 844.6(a) does provide that "a public

14  entity is not liable for ... [a]n injury to any prisoner."  Cal.

15  Govt. Code § 844.6(a)(2).  Defendant fails to recognize that

16  there are several exceptions to this immunity, and does not

17  address whether any of the exceptions applies here.[20]  Because of

18  those exceptions, defendant is wrong in stating that the County

19  is immune from "all" claims relating to prisoner injuries.

20  Defendant does not even offer a perfunctory "with exceptions not

21  pertinent here ...."

22       Plaintiff responds by citing three cases, rather than simply

23  stating what immunity exceptions apply here.  Plaintiff first

24  cites <u>Lum v. County of San Joaquin</u>, 756 F. Supp. 2d 1243 (E.D.

25  Cal. 2010) (Karlton, J.), and <u>Giraldo</u>, for the proposition that

26  _____

27  [20] For example, the County <u>is</u> liable if its employee "knows or has
    reason to know that the prisoner is in need of immediate medical
    care and he fails to take reasonable action to summon such

28  medical care."  Cal. Govt. Code § 845.6.

                                    22

1   there is a "special relationship between jailer and prisoner

2   which imposes a duty of care on the jailer to the prisoner."

3   Opposition at 5.   However, as Lum noted, finding a duty of care

4   is conceptually distinct from the possible applicability of any

5   immunity:

6       "Conceptually, the question of the applicability of a
        statutory immunity does not even arise until it is
7       determined that a defendant otherwise owes a duty of
        care to the plaintiff and thus would be liable in the
8       absence of such immunity." Davidson v. City of
        Westminster, 32 Cal. 3d 197, 201–02 (1982).
9

10

11  Id., at 1253-54.   Thus, merely citing those cases does not

12  address whether the County is immune under Section 844.6.

13  Plaintiff next cites C.A. v. William S. Hart Union High School

14  District, 53 Cal. 4th 861, 865 (2012), apparently also for the

15  "special relationship" between "inmates and jailers" point.

16  Opposition at 5.   However, Hart addressed the "special

17  relationship" a high school has with its students.   No matter

18  what high school students may think, this court knows of no legal

19  basis for concluding that they are "prisoners" of the school

20  within the meaning of Section 844.6.   Thus, merely citing this

21  case, as plaintiff does, does not address whether the Section

22  844.6 immunity applies here.

23       In short, defendant cites an immunity statute, Section

24  844.6, as if it applies in every single case, without mentioning

25  that it has exceptions, and without asserting that none of the

26  exceptions applies.   Then, plaintiff states that defendants are

27  not immune, but without asserting that any of the immunity

28  exceptions applies.   Rather than delving into the intricacies of

23

state immunity law under Section 844.6 (or re-writing both the Complaint and the motion to dismiss, on behalf of the parties), the court will deny the motion to dismiss, as it is predicated upon defendants' plainly false assertion: that the County is immune from "all" claims of injuries to prisoners.

### C.   Claim 6: Americans with Disabilities Act.

Title II of the ADA prohibits public entities from discriminating against a "qualified individual with a disability," and from doing so "by reason of such disability." 42 U.S.C. § 12132.  The federal regulations implementing Title II require public entities to "ensure that inmates ... with disabilities are housed in the most integrated setting <u>appropriate to the needs of the individuals</u>."  28 C.F.R. § 35.152(b)(2) (emphasis added).

To state a claim under Title II, for failure to accommodate a disability, plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

<u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1021 (9th Cir. 2010).

#### 1.   County of Sacramento.

Defendants assert that plaintiff's factual allegations are

24

not specific enough under <u>Iqbal</u> and <u>Twombly</u>, to state a claim against the County.  They argue that plaintiff's allegations are mere "legal conclusions," that the allegations do not show that plaintiff is disabled, and do not show that he suffered injury by reason of his disability.

Plaintiff's allegations are not mere legal conclusions, they are very fact-specific.  He alleges that he has "serious medical issues" which include diabetes, a seizure disorder and "bilateral hip replacements."  Neither party explains why this does – nor why this does not – make plaintiff a qualified individual with a disability.  The implementing regulations define "disability" to be:

> a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

28 C.F.R. § 35.104 ("disability").  Major life activities include "walking," and physical impairments include "anatomical loss affecting ... the ... musculoskeletal" system.  Id. at (1)(i) and (2).  The allegations appear to meet this definition: plaintiff has serious medical conditions, including bilateral hip replacements, that prevent him from walking up stairs without falling.

Plaintiff goes on to allege that his disability required a specific accommodation: that he be housed on a lower tier (and in a lower bunk).[21]  He alleges that upon his incarceration, medical

_____

[21] Plaintiff spends much time on defendants' failure to place him, and others, in lower bunks.  However, there is no allegation that he was injured in any way by this failure.

personnel requested that he be accommodated by being housed on a lower tier (and a lower bunk).   He alleges that this need for accommodation, and the recommendation for accommodation were ignored, and that he was housed on an upper tier.   Plaintiff alleges that by reason of this placement, he fell while climbing the steps to his upper tier cell, and was injured.   This is enough to state a claim for failure to accommodate under Title II.   See Pierce v. County of Orange, 526 F.3d 1190, 1224 (9th Cir.) (prisoner stated a Title II claim for failure to accommodate when he alleged that "he was denied an adequate supply of catheters, and as a result suffered recurrent bladder infections," and that "he was not provided a proper mattress given his disability, and as a result developed bed sores"), cert. denied, 555 U.S. 1031 (2008).

The court will deny the County's motion to dismiss Claim 5.

### 2.   Individual defendants.

Defendants assert that a Title II ADA claim may only be brought against a public entity, not individual defendants. Motion at 18.   Plaintiffs concede the point.   Opposition at 5. The concession is well-taken, since "Section 202 of the ADA prohibits discrimination against the disabled by public entities." Barnes v. Gorman, 536 U.S. 181, 184 (2002) (emphasis added).   The ADA claim will be dismissed against all individual named and Doe defendants in their official and individual capacities.

////

////

26

**D.  Individual defendants sued in their "official" capacities.**

Defendants argue that all the claims against the individuals in their "official" capacities should be dismissed, because such claims are really claims against the municipality, and that naming the individuals is redundant.  Defendants are correct that "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."  Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2008) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)), cert. denied, 555 U.S. 10987 (2009).  Therefore, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  Id. (emphasis added).  In Center for Bio-Ethical Reform, defendant Sheriff Baca was sued only in his official capacity, and only for injunctive relief.  Id., at 780 & 786.  Accordingly, the Ninth Circuit affirmed the district court's dismissal of defendant Baca as "a redundant defendant."  Id. at 799.

The only other case defendants cite for this point is Armstrong v. Siskiyou County Sheriff's Dept., 2009 WL 4572879, 2009 U.S. Dist. LEXIS 111606 (E.D. Cal. 2009) (Burrell, J.), aff'd mem., 420 F3d. Appx. 741 (9th Cir. 2011).  Defendants there were sued in both their individual and official capacities.  However, the claims against the defendants in their individual capacities had been dismissed on immunity grounds, so that the only remaining claims against them were in their official

capacities.   In that circumstance, the district court dismissed the official capacity claims against defendants as "redundant."

It appears, then, that if the only surviving claims are against the municipality and the individuals in their official capacities, the court may dismiss the official capacity suits as redundant.  That is not the situation for any of the claims here. Accordingly, defendants' motion to dismiss them in their official capacities will be denied.

**IV.   SUMMARY**

For the reasons stated above:

1.   The court **CONSTRUES** Claim 1 (Section 1983, direct liability), to assert claims against Does 1-10, only.   To the degree Claim 1 asserts claims against the County and/or the individual named defendants, their motion to dismiss Claim 1 is **GRANTED;**

2.   Defendants' motion to dismiss Claim 2 (Section 1983, based upon official policy), is **DENIED;**

3.   Defendants' motion to dismiss Claim 3 (Section 1983, based upon custom, practice and de facto policy), is **DENIED;**

4.   Defendants' motion to dismiss Claim 4 (Section 1983, based upon supervisory liability), is **GRANTED** as to the County, and is otherwise DENIED;

5.   Defendants' motion to dismiss Claim 5 (negligence), is **DENIED**; and

6.   Defendants' motion to dismiss Claim 6 (ADA) is **GRANTED** as to all individual defendants, and is otherwise **DENIED.**

1     IT IS SO ORDERED.

2     DATED:   August 23, 2013.

3

4

5

6                              LAWRENCE K. KARLTON

7                              SENIOR JUDGE
                               UNITED STATES DISTRICT COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28